**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| GEORGE W. WAGNER, JR., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 08-0213 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 4, 9 |
| | : | | |
| PETE GEREN, | : | | |
| Secretary of the Army, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

This matter comes before the court on the parties' cross-motions for summary judgment. In this action, brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, the plaintiff seeks reversal and remand of an Army Board for Correction of Military Records' ("ABCMR") decision denying the plaintiff a 20-year service retirement and a medical disability retirement. The defendant argues that there is sufficient evidence in the record to support the ABCMR's holdings. Because the plaintiff has demonstrated that the ABCMR violated the APA by relying on non-existent evidence and, thus, denying him a 20-year service retirement, the court remands that issue to the ABCMR to make a decision in accordance with this opinion. The record, however, provides sufficient evidence to support the ABCMR's conclusion that the plaintiff is not entitled to a medical disability retirement, and accordingly, the court upholds that decision.

## II.    FACTUAL & PROCEDURAL BACKGROUND

### A.    The Plaintiff's Active Duty History

The plaintiff enlisted in the Army on June 28, 1963 and served on active duty until November 21, 1979, when he was honorably discharged because of lower back pain. Compl. ¶ 5; Def.'s Statement of Material Facts ("Def.'s Statement") ¶¶ 1-2; Administrative Record ("A.R.") at 67, 653. On January 16, 1986, the plaintiff enlisted in the Army Reserve National Guard ("ARNG") and was assigned to the District of Columbia ARNG ("DCARNG"). Compl. ¶ 6; Def.'s Statement ¶ 4. On July 3, 1994, the plaintiff returned to active duty as part of the Active Duty Special Work ("ADSW") program. Compl. ¶ 7; Def.'s Statement ¶ 6; A.R. at 10. According to the defendant, before reentering active duty, the plaintiff was required to execute DA Form 1058-R, which waived the applicability of 10 U.S.C. § 1163(d) (1993) (the "sanctuary provision")[1] that protects reservists from being involuntarily released from active duty if they are within two years of reaching retirement. Def.'s Mot. at 9. The defendant does not have a copy of the form, Compl. ¶ 18; Def.'s Mot. at 11-12; Def.'s Statement ¶ 52.a; A.R. at 76, and the plaintiff alleges that he never signed the form, Compl. ¶ 17.

---

[1]     Section 1163 has since been repealed and substantially recreated in 10 U.S.C. § 12686(a). During the relevant period 10 U.S.C. § 1163(d) stated:
> Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.

The plaintiff's orders placing him in the ADSW program incorrectly cited 32 U.S.C. § 502(f)[2] as authority under which the plaintiff was assigned to duty.  A.R. at 9, 78.  That citation was subsequently changed to note that the authorizing statute was 10 U.S.C. 672(d).[3]  *Id.*

### B.  The IRS Levy

On July 1, 1994, the Internal Revenue Service ("IRS") placed a levy on the plaintiff's wages, which the plaintiff arranged to have lifted.  Compl. ¶¶ 19, 21, 55; Def.'s Statement ¶¶ 5, 8.  On August 26, 1994 the Department of Treasury faxed a notice to the Defense Finance and Accounting Service ("DFAS")[4] indicating that the plaintiff's wages were released from the levy.  Compl. ¶ 21; Def.'s Statement ¶ 8; A.R. at 174.  Despite this notification, the Army deducted $1,238.13 from the plaintiff's August 31, 1994 wages and submitted that money to the IRS.  A.R. at 633.  This deduction placed the plaintiff in financial hardship and DFAS referred him to the IRS for resolution of the overpayment.  Compl. ¶ 24; A.R. at 174-175.  As a result of this financial hardship, on September 2, 1994, the plaintiff's supervisor sought the assistance of an Army Emergency Relief officer and requested immediate financial assistance for the plaintiff.  A.R. at 172.  The record does not contain information concerning the result of this request, A.R. at 4, and the parties make no mention of it in their submissions.  The plaintiff's supervisor also sought to extend the plaintiff's ADSW program assignment by 179 days.  *Id.*  The request to extend the plaintiff's ADSW program assignment was denied, and although the plaintiff had worked into the first week of October awaiting a decision on this request, his effective separation

---

[2]   "'Title 32 USC 502(f)' . . . is full-time National Guard duty."  A.R. at 88.
[3]   "The ADSW program permits National Guardsmen to service on active duty under a Title 10 status to provide support for special projects such as short term missions and administrative support."  Def.'s Mot. at 2.

[4]   In at least one instance the defendant refers to DFAS as the "U.S. Army Finance and Accounting Center."  Def.'s Statement ¶ 8; *see also* A.R. at 174.  Most frequently, however, the parties refer to this entity as DFAS and, for the sake of clarity, so does the court.

date was September 29, 1994.  Pl.'s Statement of Material Facts ("Pl.'s Statement") ¶ 10; Def.'s Statement ¶ 12-13.  The plaintiff did not receive a refund from the IRS until "December 1994 or later."  A.R. at 194.

### C. The Plaintiff's Line of Duty Status

On September 19, 1994, the plaintiff sought medical treatment and was referred to the psychiatric clinic at Walter Reed Army Medical Center ("WRAMC").  Compl. ¶ 26; Def.'s Mot. at 2-3.  He was seen at WRAMC five times between September 19 and October 14, 1994.  A.R. at 165.  Thereafter the plaintiff was referred to the Department of Veterans Affairs ("DVA") because he was no longer on active duty.  Pl.'s Statement ¶ 33; Def.'s Statement ¶ 15.  A "Statement of Medical Examination and Duty Status" form, completed on December 20, 1994, indicated that the plaintiff suffered from a "phase of life problem."  A.R. at 650.  That form also noted that the plaintiff's injury was not incurred in the line of duty and specified that "[f]inancial problems prompting [the plaintiff] to seek care existed prior to active duty period and actually improved while on active duty," further noting that the plaintiff's "[e]motional concerns were precipitated by financial problems which started the first of July 1994, prior to [sic] start of active duty service."  *Id*.

### D. The Plaintiff's Accrued Active Duty Time

Written documentation received by the plaintiff states various erroneous calculations for the plaintiff's accrued active duty time.  Pl.'s Mot. at 15-16; *see also* Def.'s Statement at ¶ 12.  A "Report of Separation and Record of Service" and "Certificate of Release or Discharge from Active Duty" dated January 15, 1996 noted that the plaintiff had accrued 16 years, 4 months and 24 days of active duty.  A.R. at 651-52.  On January 27, 2005, he received a letter from the ABCMR stating that he "had approximately 17 years of active Federal service."  *Id*. at 209.

4

And, on July 29, 2005, the National Guard Bureau ("NGB") indicated that the plaintiff had accrued 16 ½ years of active duty. *Id*. at 94. At the time of his final separation from active duty, the plaintiff had accrued 18 years, 3 months and 23 days of active duty. *Id*. at 202-03; Def.'s Statement ¶ 12.

### E.   Administrative & Procedural History

The plaintiff filed a total of nine applications to the ABCMR requesting medical disability retirement and/or a 20-year service retirement. A.R. at 30-51, 61, 80-176, 254-72, 293-94, 578-79, 607, 616-21, 628-49. Relevant to the court's analysis are the decisions in response to applications number seven and eight. As such, those are discussed below.

The plaintiff filed application number seven on October 5, 2004. *Id*. at 254-72. The plaintiff argued that the original determination that he did not incur PTSD in the line of duty was erroneous because, after such a ruling, the Army should have initiated a formal line of duty investigation; he also argued that the Army incorrectly calculated his active service time, published his retirement orders without his knowledge and failed to give him a medical physical prior to the publication of those orders. *Id*. at 255. On January 27, 2005, the ABCMR responded to the plaintiff's seventh application agreeing that a formal line of duty investigation should have occurred after the original determination that the plaintiff did not incur his injury in the line of duty. *Id*. at 209-10. Regarding the recalculation of his active duty time, the ABCMR referred the plaintiff to the DCARNG to request that the DCARNG update his Retirement Points History Statement. *Id*. In the event it failed to do so, he could resubmit his request to the ABCMR with evidence of the DCARNG's refusal. *Id*. The ABCMR also explained that the Army was not required to authorize a physical examination before transferring the plaintiff to the Retired Reserves. *Id*. Lastly, the ABCMR stated that the plaintiff had provided no new evidence

indicating that he was unfit for duty at the time he separated from active duty and, therefore, failed to demonstrate that he is entitled to medical disability retirement. *Id.*

As a result of the ABCMR's acknowledgment that a formal line of duty investigation should have occurred, one was conducted in April 2005. *Id.* at 101. The plaintiff's final diagnosis was "Mental Post traumatic" sustained by "Mental Stress, Financial, Death of Spouse," which the investigating officer determined the plaintiff incurred in the line of duty. *Id.* The staff of the Office of the Surgeon and the Judge Advocate of the NGB reviewed the results of this investigation, determined those results to be incorrect and, on May 21, 2005, altered the plaintiff's line of duty status to "not in line of duty – not due to own misconduct." *Id.* at 179-80. As a result the plaintiff was no longer "entitled to hospital or medical care benefits." *Id.*

On June 1, 2005, the Army National Guard issued a current statement of the plaintiff's service dates and points. *Id.* at 202-03. That record accurately reflected that the plaintiff had 18 years, 3 months and 23 days of active duty retirement points. *Id.*; Def.'s Statement ¶ 12.

The plaintiff filed his eighth application with the ABCMR on August 15, 2005. A.R. at 80-176. At that time, the plaintiff made the following requests: (1) that his record reflect that he was retained on active duty in the ADSW program pursuant to the sanctuary provision; (2) that his line of duty status be amended "to delete the determination 'phase of life problem' and any mention that [his] '[]financial status improved[]' while [he] was on [that] period of duty"; (3) that his line of duty determination be changed to attribute his stress and onset of PTSD to the financial strain caused by DFAS's deduction of funds from his pay; (4) that his ADSW program orders be corrected to reflect that he was ordered into active duty under Title 10 and not Title 32; (5) that he be made eligible for a 20-year service retirement or a medical disability retirement; and (6) that the ABCMR waive the requirement that he exhaust all other administrative avenues,

namely through the NGB.  *Id*. at 81.  The ABCMR granted two of the plaintiff's requests.  *Id*. at 65-79.  Specifically, it changed the plaintiff's ADSW program orders to note that 10 U.S.C. § 672(d) was the applicable statutory authority under which he was assigned and deleted the phrase "and actually improved while on active duty" from the plaintiff's DA Form 2173 dated December 20, 1994.  *Id*. at 78.  The ABCMR denied the rest of the plaintiff's requests.  *Id*. at 75-78.

Regarding the plaintiff's argument that he was protected by the sanctuary provision and should not have been involuntarily separated from the ADSW program, and, absent the plaintiff's signed DA Form 1058-R form waiving the sanctuary provision, the ABCMR presumed administrative regularity, assumed the plaintiff signed the form, determined that the sanctuary provision did not apply to the plaintiff and upheld his involuntary separation from active duty.  *Id*. at 76.  As a result, the ABCMR concluded that the plaintiff was not eligible for a 20-year service retirement, having accrued only 18 years, 3 months and 23 days of active duty.  *Id*. at 78.  The ABCMR did not contest the plaintiff's PTSD diagnosis, but determined that he did not incur it while on active duty and that there is no evidence that the plaintiff was unfit to perform his duties at the time of his separation.  *Id.* at 76.  Therefore, the ABCMR concluded that the plaintiff was not eligible for a medical disability retirement.  *Id*. at 76.  Furthermore, the ABCMR noted that, "[h]ad the IRS not placed a levy against [the plaintiff] prior to his entry on the ADSW tour in the first place, DFAS could not have exacerbated the problem."  *Id*. at 77.  As such, the ABCMR reasons that the plaintiff's "emotional concerns were precipitated by financial problems which started the first of July 1994, prior to start of active duty service."  *Id.*  Declining to alter the categorization of the plaintiff's condition as "phase of life problem," the ABCMR cited to the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), and described a

"'phase of life problem' as a category that can be used when the focus of clinical attention is a problem associated with a particular developmental phase or some other life circumstance that is not due to a mental disorder." *Id*. Determining that the plaintiff did not have a mental disorder, but rather a financial predicament, the ABCMR upheld the "phase of life problem" conclusion. *Id*.

The plaintiff filed a complaint in this court on June 6, 2008. The parties filed cross motions for summary judgment, and the court, having received and reviewed the administrative record, turns now to the parties' arguments.

### III.   ANALYSIS

#### A.   Legal Standard for Judicial Review of Agency Actions

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action usually is arbitrary or capricious if

>the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (explaining that "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

### B. The Defendant Violated the APA in Determining that the Plaintiff Was Not Eligible for a 20-Year Service Retirement

The defendant argues that the court should uphold the ABCMR's determination that the plaintiff is not eligible for a 20-year service retirement, because he only served 18 years, 3 months and 26 days of active duty. Def.'s Mot. at 13. The plaintiff alleges that his discharge from the ADSW program was involuntary and in violation of 10 U.S.C. § 1163(d) because he had sanctuary. Pl.'s Mot. at 3-7. According to the defendant the plaintiff explicitly waived sanctuary by signing DA Form 1058-R. Def.'s Mot. at 11-12. Despite the fact that the defendant does not have the signed original or a signed copy of that form, the ABCMR presumed administrative regularity in the absence of evidence from the plaintiff that he did not sign the form and assumed that the plaintiff was given, and signed, DA Form 1058-R. *Id.*; A.R. at 76.

9

Pursuant to Army regulations, "[t]he ABCMR begins its consideration of each case with the presumption of administrative regularity. The applicant has the burden of proving an error or injustice by a preponderance of the evidence." Def.'s Mot., Ex. A (Army Reg. 15-185) at 3. The plaintiff attempts to chip away at the presumption of administrative regularity by reviewing the circumstances surrounding his ADSW program assignment orders. Pl.'s Mot. at 5-7. The plaintiff cites to an NGB advisory opinion issued on July 25, 2005, which noted that the plaintiff's ADSW orders were "hastily prepared," issued late and, thus, had to be verbally confirmed. A.R. at 87. The NGB also remarked that the authority cited in the orders was erroneous and the plaintiff's tour should have been authorized under Title 10 and not Title 32. *Id*. at 87-88. Based on the hasty preparation and typographical error associated with the plaintiff's orders, the plaintiff argues that it is quite conceivable that he was never given, and therefore never signed DA Form 1058-R. Pl.'s Mot. at 7.

The plaintiff also avers that the defendant's repeated "miscalculation of his service time may also be the reason that the Army did not provide [him] with Form 1058-R because the Army erroneously believed he was not even close to sanctuary and thus did not have to file a waiver." *Id*. at 16, n. 2. The defendant responds that the plaintiff contradicts himself in relying on the NGB's statement that the orders were "hastily prepared" because, in his complaint, the plaintiff asserted that the Army took over a month to prepare the orders. Def.'s Reply at 6. The plaintiff counters that he meant that the orders were hastily prepared *and* at the last minute, Pl.'s Reply at 7. The defendant also states that the typographical error was addressed and corrected and, in any event, has nothing to do with whether the plaintiff signed DA Form 1058-R. Def.'s Reply at 6. Lastly, the defendant insists that, when the plaintiff began active duty in the ADSW program, the Army was aware of his correct service time and, therefore, would have required him to sign DA

10

Form 1058-R.  Def.'s Reply at 8-9.  The plaintiff maintains that the burden is not on him to prove a negative – that the form does not exist – rather, that the defendant has the burden of preserving accurate records.  Pl.'s Mot. at 5-7.

The defendant relies on *Brooks v. United States*, 213 Ct. Cl. 115 (1977), for the proposition that it is the plaintiff's burden to prove that missing paperwork never existed and that the plaintiff cannot overcome the ABCMR's presumption of administrative regularity with mere speculation.  Def.'s Reply at 3-4.  *Brooks*, however, is distinguishable from the plaintiff's case because, in *Brooks*, there was no doubt that the missing document had existed at one time.  *Brooks*, 213 Ct. Cl. at 122-23.  The issue in *Brooks* was not whether the document existed *at all*, but whether it was in the plaintiff's file at a particular time.  *Id*. at 117-18.  The *Brooks* defendant offered proof that the document at issue was in the plaintiff's file based on a stamp "at the top of the second page of [the document], which stamped date, reflecting normal, customary, and standard practice and procedure, indicates the [document] was placed in the selection folder on or about that date."  *Id*. at 122-23.  Here, in contrast, the defendant has offered no evidence from which the court could reasonably infer that the plaintiff *ever* signed DA Form 1058-R and waived the sanctuary provision.[5]  *See Bowen*, 476 U.S. at 626 (holding that "[i]t is an axiom of administrative law that an agency's explanation of the basis for its decision must include a rational connection between the facts found and the choice made" (internal quotations omitted)). In fact, the evidence, including the miscalculation of the plaintiff's service time, the incorrect statutory authority and the missing form, indicates that the Army's administrative processes were not sworn to accuracy as applied to the plaintiff and are, thus, not entitled a presumption of

---

5  The defendant's argument that the limited duration of ADSW program assignments undercuts the plaintiff's claim to sanctuary is unpersuasive because the defendant admits that the ADSW program is specifically the type of assignment to which the waiver form applied.  *See* Def.'s Mot at 9-13.

regularity. Accordingly, the court holds that the ABCMR and acted arbitrarily and capriciously in relying on a document that no evidence suggests ever existed.

### C.     The Defendant Did Not Violate the APA in Determining that the Plaintiff Was Not Eligible for Medical Disability Retirement

As presented by the parties there are two aspects of the ABCMR's decision denying the plaintiff medical disability retirement at issue: (1) that the plaintiff did not incur PTSD in the line of duty and (2) that plaintiff was unfit for duty at the time of his separation from active duty. *See* Def.'s Mot. at 17-21; Pl.'s Mot. at 10-14. To be eligible for a medical disability retirement the plaintiff must have incurred a permanent physical disability rendering him unfit to perform his duties. 10 U.S.C. § 1201; *see also* Def.'s Mot., Ex. E ("Army Reg. 635-40") at 1-3. There is no question that the plaintiff's PTSD qualifies as a disability under this section. *See generally* Def.'s Statement. Further, the plaintiff alleges that he incurred PTSD in the line of duty, that it is permanent and that, as a consequence, he was unable to perform his duties. Pl.'s Mot. at 9. The defendant challenges the plaintiff's assertions that he incurred PTSD in the line of duty and that it rendered him to unfit to perform his duties. Def.'s Mot. at 17-26.

The plaintiff's formal line of duty determination has a torturous history. The Army first made the decision that the plaintiff did *not* incur PTSD in the line of duty on December 20, 1994. A.R. at 650. The defendant has since admitted that this decision should have been followed by a formal line of duty investigation. *Id*. at 209-210. As a result, the plaintiff underwent a formal line of duty investigation in April 2005 and the investigating officer determined that the plaintiff's PTSD *was* incurred in the line of duty. *Id*. at 101. The results of that investigation were reviewed by the staff of the Office of the Surgeon and the Judge Advocate of the NGB and determined to be incorrect. *Id*. at 179-80. The product of this review was a second determination that the plaintiff did *not* incur PTSD in the line of duty. *Id*.

12

From the first line of duty determination to the ABCMR's final decision in the matter, the plaintiff was seen and evaluated by medical professionals, who reached medical conclusions. *Id*. at 101, 179-80, 650. Although the plaintiff disagrees with the final decision, the record indicates that the defendant reviewed the evidence and came to a reasoned conclusion. *Id.* The plaintiff's primary rebuttal argument involves the timing of his symptoms and his doctor's visits. Pl.'s Mot. at 10-14. According to the plaintiff, his PTSD was diagnosed during his ADSW tour as evidenced by the fact that he sought medical attention prior to his separation from active duty. *Id.* at 10. As the defendant points out, however, although a formal line of duty investigation resulted in an temporary opinion in the plaintiff's favor, both the DCARNG and the NGB disagreed with that opinion. A.R. at 70. Furthermore, the Office of the Surgeon and the Judge Advocate of the NGB also found nothing to substantiate the determination that the plaintiff was injured in the line of duty. *Id*. (relying on these opinions, the ABCMR stated, in a section of its decision titled "Consideration of Evidence," "after extensive review by the staff of the Office of The Surgeon and Judge Advocate, NGB, nothing was found to support PTSD upon entrance to active duty in July 1994"). Relying on all of the evidence and input from these various sources, the ABCMR clearly considered the relevant factors and reached a reasoned decision. *Marsh*, 490 U.S. at 378. Accordingly, the court upholds the determination that the plaintiff was not injured in the line of duty.

Because the plaintiff has failed to demonstrate that he was injured in the line of duty, the court need not examine the additional requirement of the plaintiff being unfit for duty. For the sake of creating a complete record, however, the court notes that the same reasoning applies to the plaintiff's fitness for duty determination as for his line of duty determination. That is, medical and Army personnel examined the plaintiff, reviewed his record and concluded that he

was fit for duty at the time of his separation from active duty. *Id*. at 76. Specifically, the ABCMR noted that the plaintiff continued to work into October 1994 hoping that his orders would be extended. *Id*. The court agrees that this evidence and reasoning are sufficient to sustain the ABCMR's conclusion that the plaintiff was fit for duty at the time of his separation. *See Banerjee v. United States*, 77 Fed. Cl. 522, 536 (Ct. Cl. 2007) (noting that a plaintiff must go beyond showing that he sustained a service-related injury that led to an eventual disabling condition by demonstrating that "the condition was of such extent and severity as to actually render him unfit for service at the time of his release or shortly thereafter") (internal citation omitted)). Consequently, the court concludes that the ABCMR did not act arbitrarily or capriciously in relying on this evidence to reach its decision denying the plaintiff a medical disability retirement.

## IV.   CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion for summary judgment and grants in part and denies in party the plaintiff's motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 5th day of May 2009.

RICARDO M. URBINA
United States District Judge